### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 20-cr-30050 |
| ) | |
| STACEY FURLOW, ) | |
| ) | |
| Defendant. ) | |

### OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Stacey Furlow's Motion to Revocation / Amendment of Detention Order in Light of COVID-19 Pandemic (d/e 23) (Motion).  For the reasons set forth below, the Motion is DENIED.

### BACKGROUND

On August 31, 2020, Furlow was arrested on a Criminal Complaint (d/e 1) (Complaint).  The Complaint alleged that Furlow used the means of interstate commerce to attempt to persuade a minor under the age of 18 years to engage in sexual activity which would be a criminal offense, in violation of 18 U.S.C. § 2422(b).  The Complaint alleged that an undercover

FBI agent operated a profile on an Internet dating / chatting application. The agent posed as an individual named "Clay" (hereinafter "Clay"). The profile on the app stated that Clay was 18 years old. On August 27, 2020, Furlow initiated a conversation with Clay. Furlow and Clay continued the conversation by text message. Clay stated to Furlow that he was 15 years old. Furlow and Clay continued the text conversation from August 27, 2020 to August 29, 2020. During the course of the text message conversation, Furlow sent two pictures of his penis and asked for a nude picture of Clay. Furlow made a date to meet Clay at a residence address that Clay provided to Furlow ("Target Residence"). Furlow agreed to bring "lube." Law enforcement personnel observed Furlow drive to the agreed location and park his car. Law enforcement took Furlow into custody and interviewed him at the Target Residence. Furlow admitted that he knew the person in the profile, Clay, was a minor. Furlow said he should not have come, and he had never done anything like this before. He was placed under arrest. Upon his arrest, FBI agents found KY Jelly on Furlow's person. Complaint, ¶¶ 5-19.

On September 2, 2020, this Court held a detention hearing for Furlow. The Court ordered that Furlow be detained. The Court found that, considering all the factors listed in 18 U.S.C. § 3142(g), the evidence

presented established by clear and convincing evidence that Furlow posed a danger to the safety of the community if released. Order of Detention entered September 8, 2020 (d/e 12), at 1. Furlow has thereafter been detained at the Sangamon County, Illinois, Jail in Springfield Illinois ("Jail" or "SCJ").

On September 16, 2020, the Grand Jury indicted Furlow, charging him with one count of using means of interstate commerce to knowingly attempt to persuade, induce, and entice an individual Furlow believed to be under the age of 18 years to engage in sexual activity that would constitute aggravated criminal sexual abuse under Illinois law, in violation of 18 U.S.C. § 2422(b) (Count 1); one count of using means of interstate commerce to attempt to transmit the name and address of a minor under the age of 16 years with the intent to entice, encourage, offer, and solicit that minor to engage in sexual activity that would constitute aggravated criminal sexual abuse under Illinois law, in violation of 18 U.S.C. § 2425 (Count 2); and one count of using the means of interstate commerce to knowingly attempt to transmit obscene material to an individual who Furlow believed to be under the age of 16 years, in violation of 18 U.S.C. § 1470. Indictment (d/e 15). On October 19, 2020 Furlow filed the Motion seeking release from pretrial detention pursuant to 18 U.S.C. § 3242(f) and (i) due

to the ongoing COVID 19 pandemic and because Furlow has serious health conditions.

According to the Pretrial Services Report Furlow is 53 years old, divorced, and he lived alone before his detention.  In 2009, he underwent a right lung resection, and he currently uses albuterol and corticosteroid inhalers as a result of this condition.  He also has high blood pressure.  Before his arrest, Furlow worked as a delivery truck driver for FedEx.  Furlow made deliveries for FedEx to businesses between Lincoln, Illinois, and southern Sangamon County, Illinois.  Furlow also drank alcohol on a daily basis prior to his arrest.  He drank from three to 24 beers a day, plus occasional shots of whiskey.  See Pretrial Services Report (d/e 9).  Jail personnel confirmed that Furlow is receiving his blood pressure medications as prescribed. Government's Response to Defendant's Emergency Motion to Revoke Detention Order (d/e 26) (Response), ¶ 26.  Furlow, further, does not assert that he has had any problems receiving his inhalers or other medications at the Jail.

Furlow asks the Court to release him because of an outbreak of COVID 19 at the Jail.  Furlow cites a newspaper article that Jail personnel and at least one inmate has tested positive for COVID 19.  Furlow states that "[u]ncorroborated sources" report that approximately six inmates at the

Jail and a number of Jail employees "in the mid to high teens" have tested positive for COVID 19.  <u>Motion</u> ¶ 9.  Furlow states in his Reply that more "uncorroborated reports" indicate that the number of Jail employees testing positive for COVID 19 "may now be approaching the twenties."  <u>Reply to the Government's Response to Defendant's Motion for Revocation/Amendment of Detention Order in Light of COVID-19 Pandemic (d/e 28) (Reply)</u>, ¶ 10.

Furlow argues that his serious health condition puts him at greater risk to suffer serious consequences, including an increased risk of death, if he contracts COVID 19 and that his risk of contracting COVID 19 is increased now that correctional officers and inmates have tested positive.  <u>See</u> <u>Motion</u>, at 3-5.

The Government opposes the Motion.  The United States Attorney's Office communicated with Jail Lieutenant William Smith on October 21, 2020.  As of that date, the Jail had three inmates who had confirmed cases of COVID 19.  All three are isolated at this time.  One was a woman who has had no contact with any male inmate.  The other two were not in Furlow's cell block, Block K.  Each cell block is isolated from other cell blocks and Furlow would not have had any contact with either of the positive inmates.  <u>Response</u>, ¶ 23.

In addition, the Jail has established the following procedures in response to the COVID 19 pandemic:

    a.    Social visits and recreational activities have been cancelled.

    b.    Attorney visits are conducted behind glass by way of speaking through a phone. No physical contact visits are currently allowed for federal inmates.

    c.    SCJ staff provides disinfectant wipes to both attorneys and inmates, and encourages them to wipe down any areas they use or touch.

    d.    Continuously throughout the day, hard surfaces in SCJ are wiped down with disinfectant by SCJ staff, porters, or trustees. This is completed by roving sweeps that clean each surface beginning at a specific point. Once the sweep returns to the starting point, the process starts again.

    e.    Inmates (trustees) who clean in the prison are housed in a separate area away from other prisoners to ensure that those out of their cells have limited contact with others.

    f.    All restraints are disinfected each day, and after every use.

    g.    Signage within SCJ reminds inmates and employees about basic hygiene regarding COVID-19.

    h.    SCJ staff is equipped with masks and gloves, which they wear during the course of their duties in SCJ.

    i.    Facemasks have been provided to each inmate.

    j.    Unless there is a security issue, medical issue, or court necessity, inmates are no longer to be transferred inside SCJ.

k.     Anyone (including law enforcement, prison staff, and prisoners) entering SCJ for any reason will have his or her temperature measured. If a prisoner is found to have an abnormal temperature they are placed into isolation.

l.     All individuals are not admitted without first being evaluated for COVID-19 risk.

m.     Even inmates who go through the screening process noted above and are found *not* to have an elevated body temperature are first assigned to a transitional housing unit prior to being integrated into SCJ's general population. They are not integrated into the general population until fourteen days have passed.

n.     SCJ has also started general testing of their staff and personnel for COVID-19 to ensure that no one who may interact with inmates is positive.

o.     Inmates are given the ability to shower daily, and soap is available at commissary. Individuals who cannot afford to pay for soap are provided it upon request.

p.     Prisoners who are identified as a close contact of a known COVID-19 case (even if they have no symptoms) are quarantined and monitored for COVID-19 symptoms two times per day for 14 days.

q.     Every inmate is COVID-19 screened daily by medical staff, which includes temperature check and questionnaire.

r.     Furthermore, after learning of the positive tests the facility has been on total lockdown, which includes confinement of inmates to their cells except for an hour each day.

s.     Further, Sangamon County Department of Public Health is currently consulting with the SCJ daily to ensure the safety of all inmates and personnel.

Response, ¶ 24. Jail personnel have also confirmed that the Jail has the capacity to isolate any person who may subsequently contract a confirmed case of COVID-19. The Jail also has a registered nurse on duty at all times. The healthcare staff at the Jail also includes licensed practical nurses (LPNs) and a nurse practitioner. A doctor also comes to the Jail once a week to provide care. Id. ¶ 25.

## ANALYSIS

This Court may reconsider Furlow's detention order if information not known to Furlow at the time of the detention hearing has a material bearing on the issue of whether there are conditions of release that will reasonably assure Furlow's appearance in this case and the safety of any other person in the community. 18 U.S.C. § 3142(f). The Court may also grant temporary release if such release is necessary for preparation of Furlow's defense or for another compelling reason. 18 U.S.C. § 3142(i).

The three inmates at the Jail with confirmed cases of COVID 19 constitute new information that was not known at Furlow's detention hearing on September 2, 2020. Furlow's "uncorroborated reports" of COVID 19 cases among Jail employees are not competent to prove anything. Furlow does not identify the source of these reports or provide any other factual basis to establish any reliability of these reports. The

Court, however, takes notice that as of July 30, 2020, three correctional officers at the Jail had tested positive for COVID 19.  See United States v. Luttrell, C.D. Ill. Case No. 19-30059, Opinion entered August 10, 2020, at 3. The Court further acknowledges that the number of confirmed cases among Jail staff has probably increased since July 30, 2020.  After careful consideration, however, this new information does not demonstrate that conditions of release will reasonably assure Furlow's appearance in this case and the safety of persons in the community.  The new information also does not relate to trial preparation and does not demonstrate a compelling reason to release Furlow from pretrial detention.

In determining whether conditions of release will reasonably assure Furlow's appearance in this case and the safety of any person in the community, this Court must consider the following factors:

> **(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
> > **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> >
> > **(2)** the weight of the evidence against the person;

>**(3)** the history and characteristics of the person, including--
>
>>**(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>>**(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>**(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).  In addition, Count 1 of the Indictment charges Furlow with a crime of violence that involves a minor, and so, raises a rebuttable presumption that no condition or combination of conditions will reasonably assure Furlow's appearance and the safety of any member of the community.  18 U.S.C. § 3142(e)(3)(E).  This presumption "represents Congressional findings that certain offenders, including narcotics violators,

as a group are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986).  If Furlow rebuts the presumption, the presumption does not disappear, but "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." Id.

The new information of confirmed COVID 19 cases at the Jail is not directly relevant to the § 3142(g) factors.  All these factors still weigh in favor of detention.  The nature and circumstances of the offenses charged include a serious violent crime as well as two additional crimes intended to harm a minor.  Furlow is facing a significant sentence if convicted.  The sentence for a conviction on Count 1 of the Indictment is 10 years to life. 18 U.S.C. § 2422(b). The severity of the charges and the potential penalties weigh against finding that any condition or combination of conditions for release would ensure Furlow's appearance in this case.

The evidence against Furlow is also strong.  The Government has his text messages with the FBI agent posing as the minor Clay, the two pictures of his penis that he sent to the agent, his admission that what he did was wrong, and his possession of the KY Jelly at the time of his arrest.

The strength of the evidence further weighs against finding that conditions of release would ensure Furlow's appearance at trial.

Furlow's criminal history is serious, but remote in time. Furlow was convicted in 1980 of armed robbery and discharge of a firearm in Sangamon County, Illinois Circuit Court. Furlow was 18 years old at the time. He has no history of criminal activity thereafter. Furlow's convictions for these two violent crimes are serious, but given the age of the convictions, this factor does not significantly weigh for or against finding that conditions of release would ensure Furlow's appearance at trial. Finally, the nature and seriousness of the charges against Furlow supports the inference that he could not be released from detention without posing a risk of danger to any member of the community. Overall, the § 3142(g) factors continue to weigh in favor of detention.

Under § 3142(i), the Court may allow temporary release based on any other compelling reasons. The COVID 19 pandemic presents a risk to all humans wherever they live. As quoted above, the Jail is taking significant and extensive steps to protect inmates from the risk of infection, including Furlow. In response, Furlow only presents speculation that he is more at risk in the jail than in the community. He fails to present any evidence that the steps taken by the Jail are not effective to reduce his risk

of infection while being detained at the Jail or that he would be safer if he were released into the community.

Furlow mentions the possibility of staying with a third-party custodian combined with electronic monitoring. The Pretrial Services Report states that Furlow's ex-wife would be willing to act as third-party custodian, however, she believes her landlord would raise her rent if he resided at her home. She said that Furlow would need to work to help pay the rent if he lived there.

Furlow also asks permission to work if released from detention. Furlow proposes to return to his work as a semi-tractor trailer truck driver for FedEx making deliveries to businesses between Lincoln, Illinois, and southern Sangamon County, Illinois. Furlow's proposed work would put him in contact with individuals at the FedEx offices and at the various businesses where he delivered packages. Such numerous contacts with other individuals in varied locations would also present a risk of COVID 19 infection to Furlow. Furlow presents no evidence that he would be any safer being subject to such daily exposure to many different people as a FedEx driver than he would in his detention at the Jail. Furlow further fails to demonstrate that the Probation Office could effectively monitor him if he regularly left Sangamon County as part of his job.

Defendant now represents to the Court that his ex-wife states that Defendant's 82-year old mother is willing to serve as a third-party custodian.  Reply, ¶ 8.  The Pretrial Services Report indicated that Defendant's mother declined to serve in this capacity.  Apart from this contradictory information, Furlow would still propose to work as a truck driver for FedEx and would still face the same risks of infection, and his work would still pose the same problems of monitoring him when he regularly left Sangamon County.

Furlow notes that this Court has released one pretrial detainee due, at least in part, to concerns about health risks from COVID-19.  United States v. Douglas, C.D. Ill. Case No. 18-30063, Order entered March 12, 2020 (Douglas Order).  Furlow's circumstances are substantially different from those of Defendant Douglas.  At the time Douglas filed his motion, he was in the hospital recuperating from surgery in which part of his small intestines and his appendix were removed.  Douglas Order, at 1-2.  Furlow is not recuperating from surgery.  He does not face the same risks that Douglas faced in that case.  The Douglas Order also was entered on March 12, 2020, at the very beginning of the COVID 19 outbreak in Illinois.  In the intervening months, the Jail has implemented extensive measures

discussed above to protect Furlow from COVID 19.  Furlow's circumstances are substantially different from those facing Douglas.

Furlow notes in his Reply that another Defendant facing a similar charge as Furlow was released on bond.  Reply, ¶ 6, citing United States v. Wetzel, C.D. Ill. Case No. 20-30055 (Wetzel).  Defendant Wetzel was released on bond at his detention hearing after considering the § 3142(g) factors.  Wetzel, Minute Entry entered August 31, 2020.  Furlow does not dispute that the § 3142(g) factors here weigh in favor of detaining him.  See Reply, ¶ 4 Prefatory Comment ("The purpose of this Reply, as well as Defendant's Motion, is not to relitigate his initial detention.").  Thus, the Wetzel case provides no support for the Motion.

After considering all the facts and circumstances, and the submissions and arguments of counsel, the Court finds that Furlow has failed to present new information that overcomes the presumption that no condition or combination of conditions will reasonably assure Furlow's appearance and the safety of any member of the community.  The new information also does not demonstrate compelling reason to grant him temporary release.

THEREFORE, IT IS ORDERED that Defendant Stacey Furlow's Motion for Revocation / Amendment of Detention Order in Light of COVID-19 Pandemic (d/e 23) is DENIED.

ENTER:  October 27, 2020

*s/ Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE