## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CR-30050 |
| | ) | |
| STACEY FURLOW, | ) | |
| | ) | |
| Defendant. | ) | |

### GOVERNMENT'S RESPONSE TO
### DEFENDANT'S MOTION TO BAR EXPERT TESTIMONY

The United States of America, by its attorneys, Gregory K. Harris, United States Attorney for the Central District of Illinois, and Assistant United States Attorneys Tanner K. Jacobs and Sierra Senor-Moore, hereby responds to the Defendant's Motion to Bar Expert Testimony as follows:

### Legal Standard

**A. Expertise Testimony Under Rule 702**

American jurisprudence on evidence rests upon a foundation of liberal admissibility and the conviction that the jury should be presented with any and all reliable evidence that will assist it in its deliberation. See *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 587 (1993) ("Daubert"). Rule 702 of the Federal Rules of Evidence ("Rule 702"), which governs the introduction of expert testimony, was drafted in accordance with the "'liberal thrust' of the Federal Rules and their 'general approach

of relaxing the traditional barriers to opinion testimony.'" *Id.* (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988)). Thus, until December 2000, Rule 702 directed that "[if] scientific, technical, or other specialized knowledge will assist the trier of fact," a qualified expert may testify "in the form of an opinion or otherwise." Fed. R. Evid. 702.

In 1993, the Supreme Court decided *Daubert*, which addressed those instances where a party seeks to introduce expert testimony based upon a novel or unorthodox scientific theory or technique. Under the traditional test enunciated in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), a new discipline or technique had to reach general acceptance within the relevant scientific community before it could be admitted as expert scientific testimony. In *Daubert*, the Court held that the Frye test had been superseded by adoption of the Federal Rules of Evidence, and that the rigid, restrictive "general acceptance" standard was incompatible with the liberal precepts of Rule 702. *Daubert*, 509 U.S. at 585-88. The *Daubert* decision has accordingly led to a re-evaluation of longstanding bars to some types of scientific evidence previously adjudged inadmissible as not within general acceptance. See, e.g., *United States v. Posado*, 57 F.3d 428, 430-32 (5th Cir. 1995) (polygraph testing).

The *Daubert* Court cautioned, however, that Rule 702 does not extend carte blanche to litigants to present unorthodox or unproven

theories to juries as established "science." As the Court noted, the text of Rule 702 itself calls upon the trial judge to act as gatekeeper and screen purported scientific evidence for reliability. *Daubert*, 509 U.S. at 589-90. Accordingly, the party offering purported scientific testimony must demonstrate that it represents "scientific knowledge" or the product of scientific reasoning or methods. *Daubert*, 509 U.S. at 592-93.

In undertaking the latter inquiry, the Court provided nonmandatory and nonexclusive factors for the trial court to consider: 1) whether the method consists of a testable hypothesis; 2) whether the method has been subject to peer review and publication; 3) the known or potential rate of error of the technique or theory when applied; 4) the existence and maintenance of standards and controls; and 5) whether the method is generally acceptable within the relevant scientific community. *Daubert*, 509 U.S. at 592-96 (envisioning flexible analysis when applying above "Daubert factors").

In the wake of *Daubert*, confusion arose over whether *Daubert's* analysis was restricted to expertise in purely scientific disciplines or should be applied to "technical or other specialized knowledge" under Rule 702. See, e.g., *United States v. Plunk*, 153 F.3d 1011, 1016 (9th Cir. 1998) (expertise in drug trade jargon not subject to *Daubert* analysis); *United States v. Starzecpyzel*, 880 F. Supp.2d 1027, 1028-29 (S.D.N.Y. 1995)

(*Daubert* inapplicable to handwriting analysis as expertise is practical and not scientific).

The Supreme Court's decision in *Kumho Tire Company v. Carmichael*, erased that distinction and held that *Daubert* applied not only to strictly scientific disciplines, but to expertise based upon skill, experience, or observation as well. 526 U.S. 137, 141, 149-51 (1999). The Court in *Kumho Tire* instructed that the trial judge may consider one or more of the *Daubert* factors in performing the gatekeeping function under Rule 702. The Court emphasized, however, that the *Daubert* factors do not comprise a mandatory checklist of requirements and noted that in some circumstances certain factors might lack pertinence. See also *United States v. Cruz-Velasco*, 224 F.3d 654, 660 (7th Cir. 2000).

Since the range of nonscientific expertise admissible under Rule 702 is so varied, none of the *Daubert* factors should necessarily be included or excluded in any assessment of reliability. *Kumho Tire*, 526 U.S. at 150-52 (factors intended to be helpful, not definitive). See *United States v. Paul*, 175 F.3d 906, 910-11 (11th Cir.) (trial court possesses same latitude in selecting factors to assess reliability as accorded its ultimate conclusion on admissibility), cert. denied, 528 U.S. 1023 (1999).

On December 1, 2000, Rule 702 was amended in response to *Daubert*. The amendment affirms *Daubert's* general holding setting forth

the trial court's role as gatekeeper, and *Kumho's* holding that all types of expert testimony present questions of admissibility for the gatekeeper.

The trial court must now examine "not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case." See Fed. R. Evid. 702 advisory committee's note. A hearing is not required. *See Kirstein v. Parks Corp.,* 159 F.3d 1065, 1067 (7th Cir.1998*); Target Market Publishing, Inc. v. ADVO, Inc.,* 136 F.3d 1139, 1143 n. 3 (7th Cir.1998); *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 244, 249 (6th Cir.2001). The district court's decision to admit or exclude expert testimony is reviewed for an abuse of discretion. *United States v. Jett,* 908 F.3d 252, 265 (7th Cir. 2018).

## B. Law Enforcement as Experts

Law enforcement officers who bring "the wealth of [their] experience" to the facts of a case and make clearer for the jury the facts of the case based on their specialized knowledge are experts. *United States v. Oriedo*, 498 F.3d 593, 603 (7th Cir. 2007). These experts are not testifying as lay persons based on what they observed in a particular case but using their experience and skill to aid the jury. *Id.*

Law enforcement agents have testified as experts in a variety of contexts – as an expert in drug trafficking terms (*United States v. Ceballos*,

302 F.3d 679, 687 (7th Cir. 2002).); expert in the use of counter-surveillance techniques by drug dealers (*United States v. Parra*, 402 F.3d 752, 757 (7th Cir. 2005).); expert in sex-trafficking (*United States v. Vines,* 9 F.4th 500, 505 (7th Cir.), cert. denied, 142 S. Ct. 385, 211 L. Ed. 2d 205 (2021).); expert on the methods and techniques of child molesters (*United States v. Romero*, 189 F.3d 576(7th Cir. 1999); expert in the modius operandi of pickpockets (*United States v. Jackson*, 425 F.2d 574 (D.C. Cir. 1970).); expert in prostitution (*United States v. Brinson*, 772 F.3d 1314, 1318 (10th Cir. 2014).); expert on concealment of weapons (*United States v. Christian*, 673 F.3d 702, 711 (7th Cir. 2012).); and expert on federal securities regulation (*United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).).

## Argument

SA Spivack clearly has expertise in the area of child enticement investigations based on his experience, skill, and observation as noted by both the government's disclosure of expert witness and the witnesses CV. R. 69 and 69-1. The knowledge of SA Spivack is beyond the knowledge of a lay person. The expert testimony offered by SA Spivack is similar to that offered by FBI SA Carrie Landau in *United States v. Young.* 955 F.3d 608, 616 (7th Cir.). In *Young,* the defendant had used a website called Backpage to traffic women. He would advertise the women as escorts on Backpage

and then facilitated the women's meetings with the men who responded to his advertisements. *Id.* SA Landau testified about terminology in sex trafficking, the use of backpage.com, some technical features of backpage.com, vulnerabilities of sex trafficking victims and the relationships between traffickers and victims, including the financial relationship. Brief of United States, Plaintiff-Appellee at 20, *United States v. Young.* 955 F.3d 608, 616 (7th Cir.), 2019 WL 7403935. The Seventh Circuit held that the trial court had not abused its discretion in admitting the expert testimony of SA Landau, indicating that her testimony "was reliable and helpful for the jury." *United States v. Young*, 955 F.3d 608, 615 (7th Cir.).

SA Spivack will be able to explain to the jury how these dating apps and websites work, why the FBI uses these particular websites, why and how the FBI uses confidential human sources, and how agents are trained to conduct these investigations. In particular, the testimony concerning the website applications used in these investigations will be helpful to the jury as many if not all of them are new inventions of modern technology. More specifically, SA Spivack can explain to the jury what Grindr is and how it works. He will also explain why the FBI uses adult dating and chatting applications, such as Grindr, to find and arrest individuals engaged in enticement behavior, the difference between a proactive and

reactive investigation as it relates to child exploitation and enticement and the types of behavior undercover agents are trained to detect to ensure that they are locating individuals who are attempting to entice children. SA Spivack will also explain why agents conducting these types of investigations pose as children on adult websites, as well as the reactions of individuals he meets online when told they are speaking to a minor. All of these items are things that a lay person is unlikely to know. Further, even if SA Spivack's testimony does touch on some matters which could be common knowledge or within, "the average juror's comprehension" the court is not required to exclude the testimony on that basis if the testimony may still aid in the understanding. *See United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996). Having SA Spivack explain terms and procedures in this area will aid the jury in understanding both the technology involved in this case as well as the purpose and goals of these types of operations. SA Spivack will not be testifying about this specific investigation but rather providing the knowledge and background concerning these operations generally and the functionality and makeup of the online websites used to conduct these investigations.

Finally, SA Spivack is well qualified to be an expert in this field and has in fact been previously qualified as an expert by this court (*United States v. Berrios*, No. 20-CR-30048, C.D. Ill. June 1, 2021) and by other

courts in the district. (*United States v. Dean*, No. 20-CR-20016, C.D. Ill. February 18, 2020; *United States v. Rossi*, No. 20-CR-20017, C.D. Ill. February 18, 2020). SA Spivack has worked well over one hundred cases of child exploitation amounting to significant experience in this area. He also has significant training which adds to his qualifications, including certifications as an online covert employee and an undercover agent. Finally, SA Spivack has experience in training other agents in how to perform these investigations. It is clear that SA Spivack possesses the requisite qualifications to be an expert.

Defendant argues that SA Spivack's testimony should be barred because it isn't subject to the scientific method. As explained in *Kumho Tire*, not all expert testimony is scientific in nature, some expert testimony like SA Spivack's turns on the expert's expertise in the field. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Thus, the *Daubert* factors may or may not be relevant to a court's analysis. *Id* at 150.

The testimony of SA Spivack meets all the requirements of an expert witness under Rule 702. SA Spivack is clearly an expert in his field, he possesses specialized knowledge which will aid the trier of fact in understanding the evidence and determining the facts at issue, and his testimony is the product of reliable principles and methods used by the FBI across the country.

**CONCLUSION**

WHEREFORE, the government respectfully requests that this Court deny the defendant's motion to bar expert testimony.

Respectfully Submitted,

GREGORY K. HARRIS
UNITED STATES ATTORNEY

/s/ Tanner K. Jacobs
Tanner K. Jacobs, PA Bar No. 319265
Assistant United States Attorney
United States Attorney's Office
318 South Sixth Street
Springfield, IL 62701
Phone: 217-492-4450
Email: tanner.jacobs@usdoj.gov

/s/ Sierra Senor-Moore
Sierra Senor-Moore, IL Bar No. 6321486
Assistant United States Attorney
United States Attorney's Office
318 South Sixth Street
Springfield, IL 62701
Phone: 217-492-4450
Email: sierra.senor-moore@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Mark K. Wykoff

*/s/ Tanner K. Jacobs*
Tanner K. Jacobs
Assistant United States Attorney